## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

PATRICK HORAN,

                Plaintiff,

      v.

ROBERT COLLINS, et al.,

                Defendants.

CIVIL ACTION NO. 1:13-CV-00140

(CALDWELL, J.)
(MEHALCHICK, M.J.)

## REPORT & RECOMMENDATION

This is a civil rights action initiated upon the Court's receipt and filing of a complaint in this matter by *pro se* Plaintiff Patrick Horan on January 22, 2013. (Doc. 1). Pending before the Court are four motions for summary judgment, filed by remaining Defendants Robert Collins, Kenneth Cameron, Lt. V.Mirarchi, Sgt. Hardy, Sgt. Suzadail, Sgt. O'Day, Kirk Bearjar, Jerry Casner, C.O.T. Warford, C.O. Covington, C.O. Eidem, C.O. Gaile, and Dorzinsky. (Doc. 131; Doc. 143; Doc. 157; Doc. 168).

### I.   BACKGROUND

Plaintiff Patrick Horan, proceeding *pro* se, filed the original complaint in this matter on January 22, 2013, asserting claims for damages against twenty-four (24) defendants pursuant to 28 U.S.C. § 1983. (Doc. 1). Horan's claims arise out of an incident that took place on October 9, 2010, while incarcerated at the State Correctional Institution at Frackville, Pennsylvania ("SCI-Frackville"), whereby fellow inmate, Wayne Liddick, was allegedly harassed and injured by two Department of Corrections officials – Defendants Eidem and Hardy. (Doc. 1). Horan alleges that he was retaliated against as a result of filing grievances on behalf of Wayne Liddick

in response to the October 9, 2010 incident. (Doc. 1).  Specifically, Horan alleges that he was subjected to retaliatory harassment in the form of false misconduct reports, mail tampering, institutional transfer, as well as being labelled a "child molester" in the presence of other inmates. Moreover, he claims that he was sexually harassed and placed at risk of assault for being labeled a "child molester."

Defendants filed a motion to dismiss Horan's complaint on April 1, 2013 (Doc. 11), which was subsequently granted in part and denied it in part. (Doc. 47). As part of the disposition of Defendants' motion to dismiss, Horan was granted leave to amend his complaint. (Doc. 47). Shortly thereafter, Horan filed an amended complaint, together with a brief in support of his amended complaint. (Doc. 49). On March 25, 2014, Defendants filed a motion to dismiss Horan's amended complaint on the basis that Horan failed to state a conspiracy claim under 42 U.S.C. §§ 1985(2) and 1986, and that all claims were barred by the doctrine of res judicata. (Doc. 54). The Court granted Defendants' motion to dismiss with respect to Horan's conspiracy claims, but denied Defendants' motion to dismiss with respect to the issue of res judicata. (Doc. 94).

To date, the remaining claims in this action are as follows:  (1) Horan's First Amendment retaliation claim against Defendants Suzadail, Hardy, Covington, and Warford for filing a false misconduct report; (2) Horan's First Amendment retaliation claim against Defendants Collins and Cameron for transferring Plaintiff to the State Correctional Institution at Cresson, Pennsylvania ("SCI-Cresson"); (3) Plaintiff's First Amendment and Eighth Amendment claims against Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile for referring to him as a "child molester" in the presence of other inmates; (4) Horan's Eighth Amendment claim against Defendant Covington and O'Day for sexual harassment; (5)  Horan's First Amendment claim

against Defendants Collins, Dorzinsky and Mirarchi for mail tampering; and, (6) Horan's Eighth Amendment claim against Defendants Cameron, Bearjar and Casner for labeling him "Unassigned- Refusing Program," and thereby placing him at risk of assault. (Doc. 94).

Pending before this Court are four separate motions for summary judgment filed by Defendants on the remaining claims in this action. (Doc. 131; Doc. 143; Doc. 157; Doc. 168). Specifically, Defendants have filed:  a motion for summary judgment dated January 12, 2016 addressing Horan's Eighth Amendment claim against Defendants Cameron, Bearjar and Casner for labeling him  "Unassigned- Refusing Program" (Doc. 131); a motion for summary judgment dated March 15, 2016 addressing Horan's  First Amendment and Eighth Amendment claims against Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile for referring to him as a "child molester" in the presence of other inmates, and Horan's First Amendment claim against Defendants Collins, Dorzinsky and Mirarchi for mail tampering (Doc. 143); a motion for summary judgment dated May 16, 2016 addressing  Horan's First Amendment retaliation claim against  Defendants Suzadail, Hardy, Covington, and Warford for filing a false misconduct report and Horan's Eighth Amendment claim against Defendant Covington and O'Day for sexual harassment (Doc. 157); and, a motion for summary judgment dated June 14, 2016 addressing Horan's First Amendment retaliatory transfer claim against Defendants Collins and Cameron (Doc. 168).  Having been fully briefed, these motions are ripe for adjudication.

## II.   STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury . . . could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Once that prima facie showing has been made, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or

draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Prosecution

## III.   DISCUSSION

### A.   FIRST AMENDMENT CLAIM AGAINST DEFENDANTS EIDEM, MIRARCHI, HARDY, SUZADAIL, AND GAILE FOR LABELLING HORAN A "CHILD MOLESTER"

Horan asserts a First Amendment retaliation claim against Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile arising out of their purported characterization of Horan as "child molester" in the presence of other inmates.  Defendants move for summary judgment on the ground that Horan has failed to exhaust his administrative remedies as to his retaliation claims. (Doc. 143). Alternatively, Defendants contend that Horan has failed to establish the requisite causal connection between the constitutionally protected activity and any adverse action taken against him. (Doc. 143). The Court addresses each of Defendants' arguments in turn.

#### 1.  Horan failed to exhaust his administrative remedies prior to filing suit.

Before bringing a 42 U.S.C. § 1983 action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) ("Prison officials are likely to have greater legal expertise and . . . superior access to prison administrative records in comparison to prisoners.") (quotation omitted). Moreover, § 1997e(a) requires "proper" exhaustion of administrative remedies, meaning strict compliance with DOC deadlines and other procedural

rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules' — rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88) (citation omitted); *see also Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not [§ 1997e(a)], that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "The only constraint is that no prison system may establish a requirement inconsistent with the federal policy underlying § 1983 and § 1997e(a)." *Strong*, 297 F.3d at 649. Thus, it follows that "grievances must contain the sort of information that the administrative system requires." *Strong*, 297 F.3d at 649. However,

> if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."
>
> *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Strong*, 297 F.3d at 650).

Under DC-ADM 804, an inmate is required to "specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law."[1] While generally, "perfect overlap between the grievance and a complaint is not required by the PLRA" so long as "there is a shared factual basis between the two," *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (per curiam), the Third Circuit has likewise held that, "to pursue a claim in federal court based on retaliation, [a plaintiff] must first have exhausted administrative remedies for that claim." *Boyd v. United States*, 396 F. App'x 793, 796 (3d Cir. 2010) (not precedential); *Hoffenberg v. Provost*, 154 F. App'x 307, 311 (3d Cir. 2005) (per curiam). Indeed, retaliation is a separate claim that must be raised in an inmate's prison grievance to exhaust administrative remedies. Exhaustion of one claim does not excuse an inmate's failure to exhaust a factually similar claim for retaliation. *Boyd*, 396 F. App'x at 796; *Sloan v. Rozum*, No. CIV.A. 10-205, 2012 WL 3860477, at *12 (W.D. Pa. Aug. 7, 2012), *report and recommendation adopted*, No. CIV.A. 10-205, 2012 WL 3860441 (W.D. Pa. Sept. 5, 2012) ("Retaliation claims are included in the term 'prison conditions' and require an inmate to exhaust administrative remedies" as to those claims.").

Here, it is undisputed that Horan submitted three grievances alerting prison officials to Defendants' labelling of Horan as a child molester through all three levels of the Pennsylvania Department of Corrections' established inmate grievance system; namely, Grievance 370808 (Doc. 147-4, at 1), Grievance 372560 (Doc. 147-5, at 1), and Grievance 378792 (Doc. 147-6, at 1). Nowhere in these initial grievances, however, did Horan directly or indirectly assert a

---

[1] *See generally* DC-ADM 804, Inmate Grievance System (May 1, 2014), *available at* http://www.cor.pa.gov/Administration/General%20Information/Documents/DOC%20 Policies/804%20Inmate%20Grievances.pdf. The Defendants have submitted a copy of the prior version of this same regulation, which was in force at the time of the events described in the amended complaint.

retaliation claim.[2] Horan has thus failed to properly exhaust the available administrative remedies afforded by prison regulation DC-ADM 804 prior to filing this action.

Accordingly, Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile are entitled to summary judgment (Doc. 143) on Horan's First Amendment retaliation claim relating to their purported public labeling of Horan as a child molester.

### 2. Horan has failed to establish a *prima facie* case of retaliation.

Even assuming, *arguendo*, that Horan properly exhausted his administrative remedies, it is clear that Horan's First Amendment retaliation claim would nevertheless be subject to dismissal on its merits.

To state a *prima facie* case of retaliation in violation of the First Amendment, a plaintiff must establish the following elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).   To amount to retaliation, the conduct must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir. 2006) (quotation marks and citation omitted).

---

[2] Horan argues that his reference to *Irving v. Dormire*, 519 F.3d 441 (8th Cir. 2008) in one of his initial grievances would have alerted prison officials to his complaints of retaliation. (Doc. 155, at 12).   However, *Irving* did not address any First Amendment retaliation claim. Rather, the Eighth Circuit Court of Appeals upheld the district court's denial of defendants' motion for summary judgment as to plaintiff's Eighth Amendment deliberate indifference claim on qualified immunity grounds. Indeed, it appears Horan attempts to cloak what he originally framed as an Eighth Amendment deliberate indifference claim in his grievances as a cause of action under the First Amendment against these prison officials based upon an alleged characterization of him as a child molester.

The factual allegations Horan provides in support of his retaliation claim consist of the following:

> From November 18. 2010 through December, C.O. Gaile continually harassed Plaintiff as retaliation for his complaints regarding the 10/09/10 incident. C.O. Gaile also told other inmates that Plaintiff was a child molester.

> On June 25, 2011, Lt. V. Mirarchi issued a Direct Order to Plaintiff to report to Property/Security at 18:00 to discuss what documents the Dept. of Justice might be interested in obtaining from Plaintiff . . . . At that time[ ] Lt. V. Mirarchi had Plaintiff sign an Inmate Statement verifying that Plaintiff refused to discuss this matter with Lt. Mirarchi. At that time, Lt. V. Mirarchi called Patrick Horan a "child molesting fuck" in the presence of three other inmates who were there for urine tests. . . .

> On August 4, 2011, C.O. Eidem yelled across the Dining Hall to Inmate Dennis Hawk, "What are you doing walking in the yard with that child molester Horan!" This was done in front of a bunch of other inmates. . . .

> The retaliatory conspiratory actions of Lt. V. Mirarchi, Sgt. Hardy, Sgt. Suzadail, C.O. Eidem and C.O. Gaile of labeling Plaintiff Patrick Horan as a snitch and/or Child Molester, and the opening and reading of Plaintiff's privileged correspondence from the Dept. of Justice and confiscation of his legal materials by Lt. V. Mirarchi, was done capriciously and maliciously in an attempt to stir up tension and/or provoke an attack on Plaintiff . . . .

(Doc. 49, at 6, 8, 10, 15).

At the outset, it is clear from Horan's pleadings and his brief in opposition to Defendants' summary judgment motion concerning this claim, that Horan "consistently display[s] a preternatural, global, subjective sensitivity to alleged retaliation, with [Horan] ascribing some retaliatory motive to virtually every action that occurs at the prison." *Smith v. Price*, No. 3:11-CV-1581, 2012 WL 6541008, at *17 (M.D. Pa. Nov. 21, 2012), *report and recommendation adopted,* No. 3:11-CV-1581, 2012 WL 6553651 (M.D. Pa. Dec. 14, 2012). Notably, Horan does not point to a particular constitutional activity he was engaged in that triggered the retaliatory misconduct he currently challenges. Indeed, Horan has not identified in this context the protected activity that allegedly spurred on this particular set of retaliatory acts.

*Wicker v. Shannon*, No. 3:09-CV-1629, 2010 WL 3812351, at *7 (M.D. Pa. Sept. 21, 2010).

Rather, Horan attempts to "tie disparate events, committed by different actors, together into a seamless web of retaliation," in what he has deemed to be a "campaign of harassment" arising out of a resolve to assist Inmate Wayne Liddick in righting an injustice inflicted on him by prison officials. *Brown v. Varner*, No. 3:11-CV-1258, 2013 WL 4591817, at *15 (M.D. Pa. Aug. 28, 2013). Horan invites the Court to ascertain for itself what constitutional protected activity Horan engaged in that would suffice for purposes of stating a First Amendment retaliation claim, and then urges the Court to infer from the timing and nature of any and all alleged misconduct a retaliatory motive on the part of these Defendants.

As a corollary to that observation, Horan has utterly failed to meet the demanding burden of establishing a causal link between the exercise of any constitutional right and the adverse action taken against him and argued by Defendants. To evaluate the existence of a causal link between the constitutionally protected conduct and adverse action, the Third Circuit has adopted a burden-shifting analysis: the prisoner-plaintiff bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to take adverse action against him; once a prisoner has made his *prima facie* case, the burden then shifts to the defendant to prove by a preponderance of the evidence that he would have taken the same adverse action even in the absence of the protected activity, for reasons reasonably related to a penological interest. *Carter v. McGrady*, 292 F.3d 152, 157–58 (3d Cir. 2002); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Overcoming the initial burden of showing the requisite causal connection between the constitutionally protected conduct and the adverse action requires that a plaintiff prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of

antagonism coupled with timing to establish a causal link . . . ." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920–21 (3d Cir. 1997)). In the absence of such proof, however, the plaintiff may show that the "evidence gleaned from the record as a whole" provides an inference of causation. *DeFlaminis,* 480 F.3d at 267  (citing *Farrell,* 206 F.3d at 281).

"Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation." *Victor v. Huber*, No. 3:12-CV-282, 2012 WL 2564892, at *9 (M.D. Pa. Feb. 28, 2012) (citing *See Killen v. N.W. Human Servs., Inc.,* No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.,* No. 04–2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); *Mar v. City of McKeesport,* No. 05–19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (holding that temporal proximity of three months was insufficient to establish causation); *Fischer v. Transue,* No. 04–2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (holding that temporal proximity of three weeks was insufficient to establish causation)). However, the Court is not limited to a determination of whether the temporal proximity between the protected activity and the alleged retaliatory act creates an inference of a causal connection to the exclusion of all other facts or circumstances potentially probative of causation. *Farrell,* 206 F.3d at 279; *Rauser,* 241 F.3d at 334 (noting that "suggestive temporal proximity" is relevant but not determinative of causation).

Moreover, "courts have rejected a retaliation claim against one defendant based on a grievance filed against another defendant." *Victor v. Lawler*, No. 3:07-CV-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd,* 565 F. App'x 126 (3d Cir. 2014); *Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (upholding the district court's entry of summary judgment in favor of defendants on plaintiff's First Amendment retaliation claim on the basis that the plaintiff failed to satisfy the causal connection requirement, as the previously filed grievance did not name defendant  who purportedly took adverse action against him); *Evans v. Rozum*, No. CIV.A. 07-2301, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) (holding that to the extent the grievances and pending lawsuit were not filed against the moving defendants, "there is no apparent reason why [the moving defendants] would want to retaliate against [p]laintiff for filing a lawsuit against others").

Horan's First Amendment retaliation claim, as pleaded, is insufficient to state a claim upon which relief may be granted, as the factual allegations do not provide a basis for which an inference of causation could be drawn. Horan has not identified the specific grievances he believes motivated the alleged retaliatory conduct of these Defendants, nor has he pleaded facts demonstrating an unusually suggestive temporal proximity between his filing of a grievance and any incident in which Defendant purportedly labelled him as a child molester. Moreover, Horan has not resolved how any of these Defendants would have obtained knowledge of any specific grievances filed on behalf of himself or Wayne Liddick, as he does not pinpoint any grievance directed at any given Defendant. Simply stated, Horan has failed to establish that his engagement in a protected activity was a substantial or motivating factor in Defendants' decision to label him a child molester. Accordingly, Defendants are entitled to summary judgment on Horan's claims of retaliation (Doc. 143), because he cannot establish facts to

support an arguable connection between his protected activity and the adverse action taken against him.

B. FIRST AMENDMENT RETALIATORY TRANSFER CLAIM AGAINST DEFENDANTS COLLINS AND CAMERON

Horan also asserts a First Amendment retaliatory transfer claim against Defendants Collins and Cameron. Specifically, Horan claims that he was transferred from SCI-Frackville after contacting Superintendent Collins seeking permission to correspond with inmate David Chacko for purposes of filing a joint lawsuit. Defendants move for summary judgment on this claim on the basis that Horan failed to exhaust his administrative remedies prior to filing suit. (Doc. 168). Alternatively, Defendants assert that Horan's retaliation claim fails on the merits.

As stated in detail above, the Prison Litigation Reform Act ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA mandates that inmates "properly" exhaust administrative remedies prior to filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81 (2006). The Pennsylvania Department of Corrections has implemented an official inmate grievance system, which is governed by DC-ADM 804. DC-ADM 804 sets forth a three-tier administrative remedy system. To exhaust, an inmate must first present his grievance to the Facility Grievance Coordinator for initial review within fifteen working days[3] after the events upon which the grievance is based. (Doc. 170-4, at 8). An inmate must then appeal an adverse Initial Review Response/Rejection by the Facility Grievance Coordinator to the Facility Manager (Superintendent) within fifteen working days from the date of the Initial Review Response/Rejection, and finally, appeal an

_____

[3] Working days are defined by the grievance policy as Monday through Friday, excluding holidays.

adverse decision by the Facility Manager (Superintendent) to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 170-4, at 13; Doc. 170-4, at 16). "An untimely or otherwise procedurally defective administrative grievance or appeal results in a procedural default and does not satisfy the exhaustion requirement thereby precluding an action in federal court." *Jones v. Coleman*, 535 F. App'x 90, 92 (3d Cir. 2013) (not precedential) (citing *Woodford,* 548 U.S. at 90-91 (holding that proper exhaustion of administrative remedies means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits)).

Here, because his transfer from SCI-Frackville to SCI-Cresson was effectuated on August 16, 2011, Horan was required to file an initial grievance on or before September 7, 2011, or fifteen working days from when he was transferred to SCI-Cresson. The record reflects that on August 28, 2011, Horan mailed SOIGA an initial grievance form dated August 25, 2011, contesting, among other things, his transfer to SCI-Cresson. On August 30, 2011, the SOIGA Grievance Review Officer Keri Moore responded to Horan's initial grievance in the following manner:

> This office is in receipt of your grievance dated 8/25/2011 in regards to your transfer and wanting to write to two co-defendants. Records reflect that you filed the above referenced grievance in regard to you wanting to write to your co-defendants; however, this grievance was rejected as you included more than one issue with the grievance. You have the option to either resubmit the grievance by fixing the deficiencies noted or appeal it to the Superintendent as outlined in DC ADM 804. In regards to your transfer concern, there is no indication that you filed a grievance in regards to this matter. If you are unable to resolve your concerns informally, you are well aware that you may utilize the grievance process.

(Doc. 170-6, at 5).

Keri Moore provides further context with respect to this response in her sworn declaration submitted by Defendants for review by this Court.  Specifically, she states that upon receipt of

Horan's initial grievance review form, she conducted a search of the inmate grievance system to determine whether Horan had any grievances pending at the time. Her search revealed that Horan had recently filed Grievance 378868 that addressed his desire to correspond with other inmates. Thus, in her response to Horan, she noted that, to the extent Horan sought to appeal Grievance 378868 pertaining to his request to correspond with fellow inmates, he would be required to first appeal that determination with the Superintendent prior to seeking relief with SOIGA. To the extent he sought to file a new grievance relating to his transfer, he would need to file an initial grievance form with the Facility Grievance Coordinator. (Doc. 170-3, at 4).

Horan subsequently proceeded to file two untimely grievances regarding his transfer: Grievance 380561, filed on September 11, 2011 at SCI-Cresson, and Grievance 383030, filed on September 12, 2011 at SCI-Frackville. Grievance 380561 was denied because it was both untimely and not filed at the correct institution. Horan appealed this decision up through SOIGA, who upheld the rejection. Grievance 383030 was also rejected as untimely. Horan appealed the decision to reject the grievance up through SOIGA, who upheld the rejection on timeliness grounds and for failure to provide a copy of the Superintendent's response as required by DC-ADM 804.

Horan argues that he did, in fact, exhaust his administrative remedies by virtue of his filing a grievance with SOIGA within the applicable timeframe.[4] He further submits that he

---

[4] By way of clarification, Horan argues in his oppositional brief and statement of facts that he mailed the correspondence with SOIGA concurrently with his submission of Grievance 378868 to the Facility Grievance Coordinator at SCI-Cresson. (Doc. 173, at 2). Grievance 378868 was apparently rejected because Horan included more than one complaint within the same grievance. Horan appears to argue that the grievance did not address two separate issues, but rather, solely pertained to his dissatisfaction with his transfer to SCI-Frackville and his belief that he was transferred in retaliation for having requested to communicate with another inmate at SCI-Cresson for purposes of filing a joint lawsuit. To the extent that Horan seeks to

received a response from SOIGA after the expiration of the fifteen-day deadline, but

nevertheless proceeded to submit Grievances 383030 and 380561 in accordance with Section

1(B)(6) of DC-ADM 804, which provides:

> If the Facility Grievance Coordinator determines that the grievance is not properly submitted according to this procedures manual, it shall be rejected and returned to the inmate unprocessed with a Grievance Rejection Form (Attachment 1-C) enumerating the reason(s) the grievance was rejected. The grievance, if resubmitted, must be resubmitted under the same grievance number within five working days of the rejection notice date.

(Doc. 170-4, at 10).

Horan's argument is wholly unavailing.  Section 1of DC-ADM 804 governs Initial Review—the

first tier of the three-tier review system established for exhausting grievances. It requires that

Horan first file his grievance to the Facility Grievance Coordinator, who "shall assign a

tracking number to every grievance (even a rejected grievance) upon receipt and enter every

grievance into the Automated Inmate Grievance Tracking System." (Doc. 170-4, at 9). The

record evidences that Horan did not file a grievance with the Facility Grievance Coordinator

first. Rather, Horan bypassed the first two levels of administrative review and filed an initial

grievance directly with SOIGA in violation of Section 2(B)(1)(d) of DC-ADM 804, which

stipulates that "[a]n appeal to Final Review will not be permitted until the inmate has complied

with all procedures established for Initial Review in accordance with Section 1of this

procedures manual and for Appeal to the Facility Manager in accordance with Subsection A.

---

advance an argument that he exhausted his administrative remedies by resubmitting Grievance 378868 and properly appealing that grievance up through SOIGA, Horan has failed to produce any documentation demonstrating his exhaustion with respect to that grievance. Indeed, Grievance 378868 has not been produced by either party for review by this Court.  Accordingly, this Grievance does not preclude an entry of summary judgment for failure to exhaust.

above." (Doc. 170-4, at 16).   Therefore, the response Horan received from SOIGA did not trigger an additional five-day extension for resubmitting a rejected grievance as authorized under Section 1(B)(6) of DC-ADM 804, nor did it otherwise toll the fifteen working-day timeframe set out in Pennsylvania's Inmate Grievance System for filing an initial grievance with the Facility Grievance Coordinator at the facility where the events upon which the complaint was based occurred. Had Horan filed an initial grievance addressing his transfer with the Facility Grievance Coordinator within fifteen days from when he was transferred and had received a rejection of that grievance, he would then be entitled five days from the date of that rejection to resubmit his grievance. Horan's failure to avail himself of the proper administrative channels in misfiling his initial grievance, and any delay he may have encountered in awaiting a response to that initial grievance from SOIGA, does not excuse his procedural default. Moreover, Horan cannot avoid the exhaustion requirement by implying that the clearly established grievance policies were not adequately explained to him. *Davis v. Warman,* 49 F. App'x 365, 368 (3d Cir. 2002) (not precedential). Accordingly,  Defendants Collins and Cameron and entitled to summary judgment on Horan's First Amendment retaliatory transfer claim (Doc. 168), as Horan procedurally defaulted on this claim for failing to satisfy the requirement of proper exhaustion.

C. FIRST AMENDMENT CLAIM AGAINST DEFENDANTS SUZADAIL, HARDY, COVINGTON, AND WARFORD FOR ALLEGEDLY ISSUING HORAN A FALSE MISCONDUCT

Horan asserts a First Amendment retaliation claim against Defendants Suzadail, Hardy, Covington, and Warford arising out of an allegedly false misconduct issued to him on January 17, 2011. The factual allegations contained in the amended complaint against these Defendants are spurious. Specifically, Horan alleges the following:

On January 17, 2011 at 9:00, Plaintiff asked Defendants, C.O. Covington, Sgt. Hardy and Sgt. Suzadail for a Grievance Form. Later that day Patrick Horan received a Falsified Misconduct #B187042 which was written by Trainee C.O. Warford, who wasn't even on the unit at 9:00 when the incident supposedly happened. Plaintiff has three witness statements to verify that fact.

(Doc. 49, at 7).

The exhibits he references in support of this claim shed some light on his allegations. It appears that the events forming the basis of this First Amendment challenge occurred the morning of January 17, 2011, at 9:00 a.m., when Horan requested a grievance form from Defendants Suzadail, Hardy, and Covington on behalf of Inmate Ford because Defendant Warford had refused to allow Inmate Ford out of his cell. (Doc. 27-2, at 73; Doc 159-1, at 6). Later that day, Horan was issued a misconduct from Defendant Warford, purportedly for directing abusive, obscene, or inappropriate language at Defendant Warford and for refusing to return to his cell in contravention of a direct order from Defendant Warford.(Doc. 49, at 7, 14). From what can be gleaned from the pleadings, and his response to Defendants' motion for summary judgment, Horan advances a retaliation claim based solely on his request for a grievance form.

As detailed above, to prevail on a claim of retaliation under the First Amendment, a prisoner-plaintiff must first establish that he or she engaged in constitutionally protected conduct. See *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225). While the filing of an inmate grievance certainly constitutes a constitutionally protect activity, here, Horan does not claim that he was retaliated against for filing a grievance. Rather, Horan insists that his mere request for a grievance form on behalf of Inmate Ford triggered the alleged retaliatory action taken against him. Inmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates. *Shaw v. Murphy*, 532 U.S. 223 (2001); *Miller v. Lawler*, No.

10–0946, 2012 WL 629280, at *15–16 (M.D. Pa. Feb. 3, 2012) ("[I]nmates do not possess an independent First Amendment right to provide legal assistance to fellow inmates . . . . [Thus], plaintiff cannot establish that he engaged in constitutionally protected conduct.") (citing *Walker v. Campbell*, No. CIV. A. 09-282,  2011 WL 6153104, at *9 (W.D. Pa. Oct. 31, 2011)), *report and recommendation adopted*, 2012 WL 638796 (M.D. Pa. Feb. 27, 2012), *order vacated on reconsideration*, 2012 WL 1340346 (M.D. Pa. Apr.18, 2012), *report and recommendation adopted*, 2012 WL 4103919 (M.D. Pa. Sept.18, 2012); *Wisniewski v. Fisher*, No. CIV.A. 3:13-2642, 2014 WL 4918931, at *7 (M.D. Pa. Sept. 29, 2014); *Ebersole v. Pennsylvania,* No. 01–1924, 2007 WL 2815730, at *6 (M.D. Pa. Sept.25, 2007); *Carter v. McGrady,* 292 F.3d 152, 153–54 (3d Cir. 2002). Moreover, given that requesting a grievance, alone, does not raise any constitutional concerns, it follows that requesting a grievance form on behalf of another inmate does not amount to the exercise of a constitutionally protected activity.[5] *Hunter v. Bledsoe*, No. 1:CV-10-0927, 2010 WL 3154963, at *4 (M.D. Pa. Aug. 9, 2010) (Caldwell, J.) ("The difficulty here for [p]laintiff is that he only threatened to file a grievance; he did not actually file one. Since [p]laintiff's conduct did not actually involve the exercise of a constitutional right, he fails to satisfy the first element of a retaliation claim.") (collecting cases); *Wicker v. Shannon*, No. 3:09-CV-1629, 2010 WL 3812351, at *6 (M.D. Pa. Sept. 21, 2010) ("[Plaintiff] cannot establish a retaliation claim against [defendant] based merely on his request for a grievance form.") (citing *Hunter v. Bledsoe,* No. 1:CV–10–0927, 2010 WL 3154963, at *4 n.8 (M.D. Pa. Aug. 9, 2010)).

---

[5] *But see Burgos v. Canino,* 358 F. App'x 302, 306 (3d Cir. 2009) (Plaintiff "engaged in constitutionally protected activity when he filed his own grievances and helped others file lawsuits and grievances"). The Court finds *Burgos* distinguishable from this case in that here, Horan's constitutionally protected activity is based solely on delivering a grievance form to another inmate to enable him to participate in the grievance process, while in *Burgos,* the plaintiff's protected activity included filing grievances on his own behalf.

Having failed to demonstrate Horan's engagement in a constitutionally protected activity sufficient to withstand summary judgment, it is respectfully recommended that summary judgment be entered in favor of Defendants Suzadail, Hardy, Covington, and Warford (Doc. 157), with respect to Horan's First Amendment retaliation claim stemming from Defendant Wardford's issuance of a misconduct form.

D. First Amendment Mail Tampering Claim Against Defendants Dorzinsky, Collins, and Mirarchi

Horan has asserted a First Amendment mail tampering claim against Defendants Dorzinksy, Collins, and Mirarchi. Defendants move for summary judgment on this mail tampering claim against Defendants Dorzinsky and Collins on the basis that Horan has failed to establish these Defendants' personal involvement in the alleged misconduct. (Doc. 143). Furthermore, Defendants seek summary adjudication in their favor with respect to Horan's First Amendment mail tampering claim asserted against Defendant Mirarchi because the record is devoid of any evidence that the mail at issue in this case was, in fact, legal mail, or that Defendant Mirarchi was engaged in a pattern or practice of opening his legal mail. (Doc. 143).

It is beyond cavil that both prisoners and their correspondents have a First Amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *see also Wolfish v. Levi*, 573 F.2d 118, 130 (2d Cir. 1978) ("The postal carrier may not be turned back at the jailhouse gate."), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979). With respect to incoming legal mail, the Third Circuit has reiterated that prisoners have a First Amendment right with respect to their legal mail and that "a state pattern or practice, or . . . explicit policy of opening legal mail outside the presence of the addressee inmate interferes with protected communications . . . and accordingly impinges upon the inmate's right to freedom of speech." *Jones v. Brown,* 461 F.3d 353, 359 (3d Cir. 2006). A single interference with the delivery

of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. *Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 79 (3d Cir. 2014) (not precedential) ("[A] single instance of interference with mail is usually insufficient to constitute a First Amendment violation . . . .");*Morgan v. Montayne,* 516 F.2d 1367 (2d Cir.1975), *cert. denied,* 424 U.S. 973 (1976). However, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim. *See, e.g., Antonelli v. Sheahan,* 81 F.3d 1422, 1431-32 (7th Cir.1996); *Castillo v. Cook Cnty. Mail Room Dep't,* 990 F.2d 304 (7th Cir.1993); *see also Jordan v. N.J. Dep't of Corr.*, 881 F. Supp. 947, 953 (D.N.J. 1995); *Thompson v. Hayman*, No. 09-1833, 2011 WL 2652185, at *5 (D.N.J. July 6, 2011) (opening outside of the prisoner's presence, reading, delaying, or stealing a prisoner's legal mail violates a prisoner's First Amendment rights).

With these well-established legal tenants in mind, the Court turns to Horan's First Amendment mail tampering claims against each Defendant.

### 1.  Defendants Collins and Dorzinsky

The allegations contained in the amended complaint with respect to Horan's First Amendment mail tampering claim, are limited to the following:

> On July 5, 2011, Plaintiff paid for postage to mail seventy-four (74) pages of documents related to this case to David Spout, Paralegal at Lewisburg Prison Project, for review. On July 13, 2011, . . . Lewisburg Prison Project wrote Plaintiff to inform him that the 74 pages of legal documents never arrived. . . .

> On August 2, 2011, Plaintiff mailed another package of legal documents to Special Agent-In-Charge George C. Venizeles. Plaintiff also obtained a Witness Receipt verifying that he mailed this package. This package never arrived at its destination.

> (Doc. 49, at 8-14).

Here, it is clear upon review of the amended complaint that Horan fails to provide any non-conclusory, well-pled factual allegations of actionable misconduct attributable to Defendants Collins and Dorzinsky that would raise his entitlement to relief beyond a speculative level or allow for a reasonable inference of a cause of action to be drawn from it. *Twombly*, 550 U.S. at 555 (holding that a plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) ( holding that while the court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."). Indeed, Horan has failed to set forth any plausible facts to support the bald assertion that his outgoing mail was withheld or destroyed by Defendants Collins and Dorzinsky. In fact, the amended complaint contains no reference to Defendants Collins and Dorzinsky, but for a lone reference to these Defendants in a section entitled "Claims for Relief," in which Horan provides the following statement: "The actions of Defendants Collins [and] Dorzinsky . . . in their continuing pattern of repeated occurrences of Mail Tampering, the confiscation of his legal documents, and failure to address such issues, including billing Plaintiff for packages of legal documents that were never sent to outside agencies, infringed on Plaintiff Patrick Horan's rights of association and Free Speech." (Doc. 49, at 14). This allegation that the prison officials named as Defendants to this claim withheld and destroyed his outgoing mail is simply speculative and conclusory. *See West v. Unknown Party # 1*, No. 2:13-cv-118, 2013 WL 6047461, at *11 (W.D. Mich. Nov. 14, 2013); *Excell v. Fischer*, No. 9:08-CV-945, 2009 WL 3111711, at *9–*10 (N.D.N.Y. Sept. 24, 2009); *Musquez v. Sepulveda*, No. C 07-5966, 2008 WL

2811503, at *1 (N.D. Cal. July 17, 2008). Construed liberally, the amended complaint only alleges facts from which it may be plausibly inferred that Horan's mail was lost in transit.

Nevertheless, even assuming that Horan articulated a cognizable First Amendment mail tampering claim against these Defendants in his amended complaint, Horan cannot withstand summary judgment as to this claim, as he offers no evidence to create a genuine issue of material fact with respect to Defendants' personal involvement in any delay or withholding of legal mail, specifically as it relates to Dorzinsky's testimony in his sworn declaration that he "generally oversaw the mailroom as part of [his] numerous other duties as Business Manager, [but] was not typically involved in the day to day operations of the mail room" and that he has "absolutely no knowledge about the Plaintiff's alleged attempt to mail documents to the FBI or the Lewisburg Prison Project or any other legal entity." (Doc. 147-2, at 3); *see Jones v. UPS,* 214 F.3d 402, 407 (3d Cir. 2000) (holding that "[a]t summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial"). It is well-settled law that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior* . . . ." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (internal citations omitted). Indeed, a defendant in a civil rights action "'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). An

allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to § 1983 liability. *Padilla v. Beard*, No. CIV. 1:CV-06-0478, 2006 WL 1410079, at *3 (M.D. Pa. May 18, 2006); *Rode*, 845 F.2d at 1207. Here, Horan attempts to overcome summary judgment by relying on a theory of supervisory liability—that Defendants were imputed with knowledge sufficient to satisfy the personal involvement requirement based solely upon their status as supervisors and their receipt of after-the-fact filed grievances. Such assertions fail to establish personal involvement on the part of these Defendants. Accordingly, it is respectfully recommended that the motion for summary judgment (Doc. 143), be granted in favor of Defendants Collins and Dorzinsky on Horan's First Amendment mail tampering claim. *See Taylor v. Oney*, 196 F. App'x 126, 128 (3d Cir. 2006).

### 2. Defendant Mirarchi

Relevant to Horan's claim against Defendant Mirarchi, Horan insists that he received a letter from the Department of Justice on June 24, 2011 that was previously opened. He claims that on June 25, 2011, Defendant Mirarchi attempted to interview him regarding the contents of the correspondence with the Department of Justice, but that Horan refused. Horan further alleges that Defendant Mirarchi required Horan to sign an "Inmate Witness Statement Form" at that time. (Doc. 155, at 6). Horan concludes that Defendant Mirarchi intentionally opened and read the letter from the Department of Justice as evidenced by the nature of Defendant Mirarchi's questioning at the interview on June 25, 2011. In support of Defendants' motion for summary judgment on Horan's claim that Defendant Mirarchi tampered with his legal mail in violation of the First Amendment, Defendants have produced Defendant Mirarchi's sworn declaration in which he admits that while he "had the opportunity to interview the Plaintiff on or around June 25, 2011 . . . [he] do[es] not recall the exact circumstances surrounding the

interview. [However, he] can say for certainty that [he] had no knowledge of any opened legal mail, or specifically any letter the Plaintiff sent or received from the United States Department of Justice." (Doc. 147-3, at 3).

In opposition to Defendants' motion for summary judgment, Horan has come forward with a number of documents he insists create a genuine issue of material fact as to whether Defendant Mirarchi intentionally opened and read his legal mail.  Specifically, Horan references his own deposition testimony discussing his belief that Defendant Mirarchi opened and read his legal mail, as well as a grievance dated June 27, 2011 in which he complains that on June 25, 2011, Defendant Mirarchi gave him a direct order to report to security, at which time he "kept attempting to get [Horan] to discuss the letter from the U.S. Dept. of Justice but [he] declined," (Doc. 27-3, at 80), and a response to that request slip from Lieutenant Verchimak, who indicates that Defendant Mirarchi "didn't know about [Horan's] letter from the U.S. Justice Department [but rather] . . . s[aw] [Horan] on the sidewalks earlier in the shift and told [Horan] that he would be calling [him] to the Main Control area to speak with [him] concerning [his] request slip." (Doc. 27-3, at 82).  Importantly, Horan has also attached to his brief in opposition a copy of a memorandum authored by Lieutenant Mirarchi to Captain Avezzano dated June 25, 2011 regarding a request slip from Horan dated June 23, 2011, concerning a confrontation in the dining hall between himself and Defendant Eidem that took place that same date. In that memorandum, Defendant Mirarchi documents that he interviewed Horan on June 25, 2011 for purposes of obtaining Horan's account of the June 23, 2011 incident in the dining hall involving Defendant Eidem. Defendant Mirarchi notes that Horan refused to discuss the matter and, as a result, was ordered to the reception corridor "where he provided a statement form confirming his refusal to attempt a resolve." (Doc. 153-1, at 3).

This evidence, viewed in the light most favorable to Horan, is insufficient to permit a reasonable jury to infer that Defendant Mirarchi tampered with his legal mail. For one, Horan relies on unsupported, inconsistent deposition testimony to support his claim that Defendant Mirarchi conducted the interview on June 25, 2011 for the purpose of questioning him about the contents of the letter Horan received from the United States Department of Justice. Such self-serving testimony cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."); *Brooks v. Am. Broad. Cos., Inc.*, 999 F.2d 167, 172 (6th Cir. 1993) ("[T]he district court [is] not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."); *cf. Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Indeed, Horan's deposition testimony in which he insists that Defendant Mirarchi ordered Horan to appear for an interview on June 25, 2011 for the purpose of questioning him about the letter sent from the United States Department of Justice is belied by the documents Horan submits that reveal that the interview was conducted for the purpose of obtaining Horan's statement regarding a completely unrelated incident that took place in the dining hall involving Defendant Eidem on June 23, 2011. At best, such evidence only establishes that an interview took place on June 25, 2011. It does not permit a reasonable jury to infer what was said at that interview.  More

importantly, Horan fails to present any documentary evidence refuting Defendant Mirarchi's statement that he did not open or read any mail from the United States Department of Justice.

Accordingly, as the evidence in the record is insufficient to support an inference that Defendant Mirarchi tampered with Horan's legal mail in violation of the First Amendment, it is respectfully recommended that Defendants' motion for summary judgment (Doc. 143) be granted with respect to Defendants' First Amendment retaliation claim.

### E.  EIGHTH AMENDMENT CLAIMS

Remaining in this action are three Eighth Amendment deliberate indifference claims asserted against the following Defendants:  (1) Defendants Covington and O'Day for sexually harassing Horan; (2) Defendants Cameron, Bearjar, and Casner for labeling Horan "Unassigned-Refusing Program;" and, (3) Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile for referring to Horan as a child molester in the presence of other inmates.

The Eighth Amendment imposes a "duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir. 1997). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).  To survive summary judgment on an Eighth Amendment challenge to a prison condition , a plaintiff must produce sufficient evidence establishing  that: (1) he was incarcerated under conditions posing a substantial risk of serious harm (an objective inquiry), which  "'may be established by much less than proof of a reign of violence and terror,' but requires more than a single incident or isolated incidents;" (2) the prison official-defendant acted with deliberate indifference to the substantial risk to the plaintiff's health and safety (a subjective inquiry); and, (3) the prison official's

deliberate indifference caused the plaintiff harm. *Bistrian v. Levi,* 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer,* 511 U.S. at 834; *Hamilton,* 117 F.3d at 746).

Proof of culpable subjective intent is a critical component of an Eighth Amendment failure-to-protect claim. The requisite state of mind is that of deliberate indifference to the prisoner's health or safety. "[A] prison official cannot be found liable under the Eighth Amendment for failure to protect an inmate unless the official subjectively knew of and chose to disregard a substantial risk of serious harm to an inmate's health or safety." *Okey v. Strebig,* 531 F. App'x 212, 214 (3d Cir. 2013) (not precedential) (citing *Farmer,* 511 U.S. at 837; *Beers–Capitol v. Whetzel,* 256 F.3d 120, 125  (3d Cir. 2001)), *cert. denied,* 134 S. Ct. 446 (2013). "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers–Capitol,* 256 F.3d at 133. Actual knowledge can be inferred, however, where "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and where "circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Beers–Capitol,* 256 F.3d at 133 (quoting *Farmer,* 511 U.S. at 842–43). Nonetheless, it is insufficient for an official to simply be "aware of facts from which the inference can be drawn that a substantial risk of serious harm exists." *Farmer,* 511 U.S. at 837. As the Supreme Court has explained,

> a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 83.

With these benchmark legal standards governing the analysis, the Court addresses each

28

of Horan's Eighth Amendment claims in turn.

### 1. Claim against Defendants Cameron, Bearjar, and Casner for labeling Horan as "Unassigned/Refusing Programming"

Horan bases his Eighth Amendment deliberate indifference claim against Defendants Cameron, Bearjar, and Casner on allegations that these Defendants labelled him "Unassigned-Refusing Program" on a call-out sheet accessible to the entire inmate population. The undisputed facts relevant to this Eighth Amendment claim are as follows. Horan is a twice-convicted sex offender currently serving a sentence for burglary and attempted rape. (Doc. 134, at 1; Doc. 140, at 1). Because of Horan's sex offense history, Horan's recommended programming requires him to complete a sex offender treatment program while incarcerated. (Doc. 134, at 1; Doc. 140, at 1). Horan was enrolled in the sex offender treatment program during his incarceration at SCI-Frackville prior to his transfer to SCI-Cresson. (Doc. 134, at 2; Doc. 134, at 2). When Horan was transferred to SCI-Cresson on August 16, 2011, he met with Defendant Casner, who informed him that he would need to complete the sex offender program. Horan apparently objected to reenrolling in the rehabilitation program on the basis that his underlying state court appeal would be compromised if he were to openly accept responsibility for having committed the sexual offenses—a component required to successfully complete the rehabilitation program. (Doc. 134, at 2; Doc. 140, at 1). Horan further maintained that deferment of that program was warranted given that he had "numerous years left on his minimum sentence." (Doc. 134, at 2; Doc. 140, at 2). Because of Horan's refusal to comply with the sex offender treatment program requirements, Defendant Casner designated Horan as having refused programming.  Inmates who refuse programming are not eligible to collect an allowance from the General Labor Pool (also known as idle pay).  Thus, Horan did not receive any idle pay, thereby interfering with his ability to obtain legal copies and postage. Moreover,

that notation appeared on a computer generated call-out list accessible to the inmate population, which, according to Horan,  prompted inquiries from inmates as to why Horan was listed on the call-out sheet as refusing programing. Horan insists that, as a result of being placed on the call-out sheet as "Unassigned-Refusing Program," Horan was confronted by a number of inmates, "placing him in possible danger." (Doc. 140, at 3).

Defendants urge this Court to grant summary judgment in their favor because no reasonable trier of fact could infer, under the circumstances presented, that these Defendants exhibited deliberate indifference to a substantial risk of harm to Stewart by categorizing him as having refused his programming on the call-out sheet. (Doc. 131). Among the record evidence Defendants proffer in support of their motion for summary judgment is a sworn declaration prepared by Defendant Casner, who testifies that:

10.    At SCI-Cresson, a call-out list was posted each evening which shows a list of inmates who have passes to be various places the next day.

11.    I was not involved in putting together the call-out list. That list was automatically generated.

12.    When an inmate was categorized as refusing programming, the computer automatically generated a notation, to assist inmate employment determinations, that the inmate in question was unassigned/refusing programing.

13.    The list did not indicate[ ] what type of programming the inmate is refusing.

14.    The list did not indicate, in any manner, that Horan was a sex offender.

15.    Inmates refuse all types of programming in prison for various reasons.

16.    I am unaware of any negative consequence which happened to Horan as a result of being designated on the call-out list as unassigned/refusing programming.

(Doc. 133-3, a 4).

In opposition to Defendants' motion for summary judgment, Horan cites to his own deposition testimony, which includes a statement that Defendant Casner "put me on the call out as unassigned/refusing program. Every prisoner knows what the means. That means that you're refusing to go to the sexual offender program," as well as a grievance he submitted on September 6, 2011, in which he complains that "on the call-out, behind my name it clearly states, 'Unassigned-Refusing Program.' This is equivalent to putting a sign on my door stating 'Child Molester.'" (Doc. 27-3, at 24).

Judged against the foregoing principles, and upon the Court's review of the record before it, it is clear that Defendants are entitled to summary judgment as a matter of law on this claim, as Horan has not produced sufficient evidence to create a genuine issue of material fact as to the objective and subjective elements comprising an Eighth Amendment deliberate indifference claim. Indeed, Horan presents no evidence of an objectively substantial risk of serious harm at the time of the challenged incident, nor is there any evidence demonstrating subjective awareness of a substantial risk of such harm by Defendants Cameron, Bearjar, and Casner.

With regard to the objective element of a Eighth Amendment deliberate indifference claim—requiring a showing that the challenged conditions posed a substantial risk of serious harm—while the Court recognizes that "the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in the prison environment," here, no evidentiary materials in the record support Horan's bare assertion that he was labelled a sex offender by these Defendants. *Renchenski v. Williams,* 622 F.3d 315 (3d Cir. 2010). Additionally, Horan has not offered any evidence to rebut Defendant Casner's testimony that the call-out list was devoid of any reference whatsoever to Horan's felony conviction of a sexual offense or to any specific prescriptive rehabilitation program. Rather, it is evident that

Horan merely conflates a nondescript programming-refusal designation on a call-out sheet with the stigma associated with being labeled a sex offender. The two are not interchangeable terms. Horan's insistence that the "refusing programming" label itself evidences a substantial risk of harm is simply misguided. Unlike a label of "child molester" or "snitch," the mere act of classifying a prisoner as "refusing programming" does not *ipso facto* create an obvious risk for which prison officials must take reasonable measures to abate. Consequently, Horan's attempt to overcome summary judgment by offering that he was approached by other inmates inquiring into the meaning of that designation, alone, does not demonstrate that Horan was subjected to a substantial risk of harm. Accordingly, Horan has not met his burden of establishing that "the risk to which he was purportedly subjected was substantial." *Day v. Federal Bureau of Prisons,* 233 F. App'x 132, 134 (3d Cir. 2007)

Even assuming, *arguendo*, that Horan overcame his evidentiary burden of establishing the existence of a substantial risk of harm deriving from Defendants' characterization of him as having "refused programing," Defendants' submissions, coupled with Horan's lack of evidentiary support, foreclose the possibility that a reasonable trier of fact could infer that these Defendants acquired the requisite level of knowledge or awareness of any purported risk to Horan's safety. With respect to Defendant Casner, Horan has not offered any evidence to controvert Defendant Casner's representations that he lacked any involvement in drafting and publishing the call-out list and was unaware of any threat of harm that might befall Horan from documenting Horan's refusal to participate in the required programming. Indeed, Horan's deposition testimony, consisting of an uncorroborated generalization that every inmate knows that a "refusing program" designation denotes an inmate's refusal to attend sex offender rehabilitation programing, does not, alone, create a genuine issue of material fact as to

Defendant Casner's deliberate indifference to Horan's safety, as such evidence does not operate to impute knowledge to Defendant Casner, but rather, merely evinces that other inmates have ascribed independent meaning to a vague notation on a call-out sheet. As for Defendants Bearjar and Cameron, the record is devoid of any evidence suggesting that Defendants Bearjar and Cameron received notification of a particularized threat of harm to Horan, let alone that such Defendants were aware that the designation even appeared on the call-out list.

Accordingly, as Horan has failed to demonstrate the substantial risk of harm to Horan posed by the unassigned/refused programming designation and that Defendants acted with the requisite culpable mindset in having assigned him that label, it is respectfully recommended that Defendants Bearjar, Cameron and Casner's motion for summary judgment (Doc. 131), on Horan's Eighth Amendment deliberate indifference claim be granted.[6]

---

[6]As a note, this Court previously permitted Horan to proceed on what he identified to be a Sixth Amendment claim against Defendants Cameron, Bearjar, and Casner, which was predicated on allegations that Horan was improperly labelled "Unassigned-Refusing Program." However, the Court is not constrained by any previous ruling, nor is it impeded from conducting additional screening of claims not fully addressed by the Court in an initial screening.  In the exercise of its discretion, the Court finds that dismissal of Horan's Sixth Amendment claim is warranted at this juncture because the factual averments forming the basis of this present challenge cannot be fairly construed as implicating the protections afforded by the Sixth Amendment, let alone any other constitutional right. To that end, the Court will not concern itself with the litany of new claims that Horan has attempted to assert in his oppositional brief, as it is "axiomatic that the complaint may not be amended by the briefs in opposition to a [dispositive motion]." *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)).

### 2. Claims against Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile for labeling Horan as a child molester in the presence of other inmates.

Horan also asserts that Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile exhibited deliberate indifference to his safety in violation of the Eighth Amendment by labelling him a child molester in the presence of other inmates.

Courts in this Circuit have recognized that labeling an inmate a child molester "may give rise to an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate." *Tabb v. Hannah,* 2012 WL 3113856, at *6 (M.D. Pa. July 30, 2012); *see Nadal v. Christie,* Civ. No. 13-5447, 2014 WL 2812164, at *9 (D.N.J. June 23, 2014) (citing *Renchenski v. Williams,* 622 F.3d 315, 326 (3d Cir. 2010) ("Courts have stated that labeling a prisoner a child molester in front of other inmates can lead to a substantial risk of serious harm to the prisoner."); *Joseph v. Asure,* Civ. A. No. 1:11-cv-01255, 2012 WL 406210, at *1 (M.D. Pa. Jan.12, 2012) *report and recommendation adopted,* 2012 WL 406204 (M.D. Pa. Feb. 8, 2012); *Brown v. Narvais,* 265 F. App'x. 734, 735 (10th Cir. 2008) (holding that allegations that prison official disclosed that prisoner was a child molester to another inmate who then spread that information in prison stated an Eighth Amendment claim upon which relief can be granted).

With respect to Defendants Hardy, Gaile, and Suzadail, Defendants correctly note that Horan has produced no documentary evidence to substantiate his allegations that these Defendants referred to him as a child molester in the presence of other inmates. Specifically, Defendants proffer Horan's deposition testimony in which he submits that he was not present when the purported remarks were made, but rather, was exclusively relying on what other

inmates told him, [7] as well as Horan's completed grievance form that contains the following statement:  "Recently I have been told by other inmates that C.O. Gaile, . . . and Spt. Suzadail have told them I was a child molester." (Doc. 147-5, at 4; Doc. 147-5, at 2).  It is well established that when deciding a motion for summary judgment, courts may not consider evidence that would be inadmissible at trial.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must . . . set out facts that would be admissible in evidence . . . ."); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir.1999) (noting that "it is not proper" to consider evidence that would not be admissible at trial "on summary judgment").  Horan's reliance on other inmates' accounts of what Defendants Gaile and Hardy allegedly said, in the absence of testimony from those inmates, constitutes inadmissible hearsay, and thus, cannot be used to defeat an otherwise properly

---

[7] Specifically, Horan testified to the following:

Q.    What about Hardy? When did he call you a child molester?

A.    I'm not sure when --- I can't recall when he did it.

Q.    All right. Tell me what you do remember about him doing it.

A.    Just that, you know, they would be talking [to] other inmates. Other inmates would come and tell me what they were saying. You know, these guys weren't told to run and come to say this stuff to me. They were saying, hey, CO Gaile said this. CO---Sergeant Hardy said that. This one said that.

Q.    So in other words, you only know about what Hardy said through other inmates telling you what he said?

A.    Right.

(Doc. 147-1, at 19).

supported motion for summary judgment.[8] *See Bristol v. Settle,* 457 F. App'x 202, 204 (3d Cir. 2012) (not precedential) ("[Plaintiff] seeks to rely on his own assertion that [defendant] told other, unidentified inmates . . . that [plaintiff's] cellmate was a child molester. But [plaintiff] acknowledged at his deposition that he was not present when those remarks were allegedly made, and [defendant] testified that he never called [plaintiff's] cell mate a child molester. The District Court properly held that [plaintiff's] testimony about what [defendant] said . . . outside of [plaintiff's] presence would be inadmissible at trial and, therefore, does not create a genuine issue of material fact."); *Abney v. Jopp,* 655 F. Supp. 2d 231, 233 (W.D.N.Y. 2009) ("As to [defendant], the only evidence that plaintiff offers in support of his allegation that [defendant] told other inmates that plaintiff was a 'snitch' is plaintiff's testimony that three other inmates said to plaintiff that [defendant] had made such statements to them. There is no admissible evidence in the record from those inmates, however, and plaintiff does not allege that he personally ever heard [defendant] call him a snitch."). Accordingly, as Horan has failed to present evidence from which a reasonable fact finder could conclude that Defendants Hardy, Gaile and Suzadail referred to him as a child molester in the presence of other inmates, the Court respectfully recommends granting Defendants' motion for summary judgment as to Horan's Eighth Amendment deliberate indifference claim against Defendants Hardy, Gaile, and Suzadail.[9]

---

[8] Moreover, Horan fails to produce evidence sufficient to rebut Defendants Hardy and Suzadail's sworn declarations that they "never in any way stated to any inmate that Horan was a child molester, or stated that Horan had been convicted of any sexual crimes." (Doc. 147-2, at 3; Doc. 147-13, at 2).

[9] Defendants likewise contend that Horan has merely invoked hearsay testimony to support his claim that Defendant Eidem "yelled across the Dining Hall to Inmate Dennis Hawk, 'What are you doing walking in the yard with that child molester Horan!'" (Doc. 49, at 10). However, Horan has presented a genuine issue of material fact as to whether Defendant

With respect to Defendants Mirarchi and Eidem, Defendants argue that Horan has failed to present evidence that he was subjected to a substantial risk of harm because he has not suffered any physical injury as a result of these Defendants characterizing him as a child molester in the presence of other inmates. Although an inmate need not wait until an actual assault takes place, to state a failure-to-protect claim, he must assert facts showing the existence of a "pervasive risk of harm." *Riley v. Jeffes,* 777 F.2d 143, 147 (3d Cir. 1985). A substantial risk of harm can exist for purposes of deliberate indifference, regardless of whether a direct threat or attack actually occurs. Courts in this circuit have found that the mere act of labelling a prisoner a snitch or child molester satisfies both the objective and subjective elements of an Eighth Amendment deliberate indifference claim. *See Thomas v. Cumberland County Corr. Facility,* Civ. A. No. 09-1323(JBS-JS), 2011 WL 6756897, *1 (D.N.J. Dec. 22, 2011); *Rodriguez v. Hayman,* Civ. No. 08–4239, 2009 WL 4122251, at *7 (D.N.J. Nov. 23, 2009) (finding that "[a]n inmate being    labeled a snitch creates    a substantial risk of harm."); *Benefield v. McDowall,* 241 F.3d 1267, 1271 (10th Cir. 2001) (holding that prison officials labeling an inmate a snitch satisfies the *Farmer* standard); *Reece v. Groose,* 60 F.3d 487, 491 (8th Cir.1995) (holding that an inmate being a known snitch is an obvious risk for which prison officials must take reasonable measures to abate the risk); *Renchenski v. Williams,* 622 F.3d 315, 326 (3d Cir. 2010) (stating that "[i]t is largely without question . . . that the sex

---

Eidem made the aforementioned statement in the presence of other inmates.   Indeed, Defendants overlook Horan's reference to the declaration of Inmate Dennis Hawk, who represents that, [o]n August 4, 2011 at 10:30, I entered the Dining Hall with the rest of the C.I. Laundry work crew. C.O. Eidem yelled to me, "What are you doing walking with that fucking child molester Horan." (Doc. 27-2, at 74). Thus, Horan has shown an unresolved question of material fact sufficient to deny summary judgment.

offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in the prison environment"). Furthermore, an inmate need not wait until actual attack occurs to obtain relief. *Benefield v. McDowall,* 241 F.3d 1267, 1270–72 (10th Cir. 2001). In making a determination of whether the risk of an inmate being assaulted by other inmates is sufficiently serious to trigger constitutional protection under the Eighth Amendment, "the focus must be, not the extent of the physical injuries sustained in the attack, but rather the existence of a substantial risk of serious harm." *Pearson v. Vaughn,* 102 F. Supp. 2d 282, 290 (E.D. Pa. 2000). Here, Horan has presented sufficient evidence to create a genuine issue of material fact as to whether these Defendants labelled him a child molester, as well evidence from which a jury could infer that he was confronted and threatened by other inmates as a result of that label, thereby placing him in substantial risk of harm. *Hendrickson v. Emergency Med. Services,* Civ. A. 95–4392, 1996 WL 472418 at *5 (E.D. Pa. Aug. 20, 1996) (denying defendants' motion for summary judgment because of factual issue as to whether a guard called a prisoner a snitch in front of other inmates); *Thomas v. District of Columbia,* 887 F. Supp. 1, 4 (D.D. C. 1995) (being "physically confronted by and threatened by inmates" after a guard started a rumor that prisoner was a snitch was "sufficiently harmful to make out an Eighth Amendment excessive force claim"); *Smith v. Donate*, No. 4:10-CV-2133, 2012 WL 3537017, at *15 (M.D. Pa. June 15, 2012), *report and recommendation adopted,* No. 4:10-CV-2133, 2012 WL 3537008 (M.D. Pa. Aug. 15, 2012).

Notwithstanding that determination, however,  the Court cannot ignore that the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA does not permit an inmate to

recover Eighth Amendment compensatory damages for purely emotional trauma of fear of assault unaccompanied by any actual physical injury. *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003). As Horan has failed to establish that he suffered any physical injury as a result of Defendants' purported labelling of him as a child molester, Defendants are entitled to summary judgment as to the Eighth Amendment claim for compensatory damages. However, Defendants are not entitled to summary judgment as to claims for punitive or nominal damages, as the PLRA "does not bar claims for nominal damages, punitive damages, or prospective equitable relief, such as injunctive or declaratory relief." *Joseph v. Asure*, No. 1:11-CV-01255, 2012 WL 3613962, at *3 (M.D. Pa. Aug. 2, 2012), *report and recommendation adopted,* No. 1:11-CV-01255, 2012 WL 3620376 (M.D. Pa. Aug. 21, 2012) (citing *Mitchell*, 318 F.3d 523 at 533-34).

Accordingly, it is respectfully recommended that Defendants' motion for summary judgment be granted with respect to Horan's Eighth Amendment deliberate indifference claim against Defendants Hardy, Gaile, and Suzadail, but denied with respect to Defendants' motion for summary judgment on Horan's Eighth Amendment deliberate indifference claim against Defendants Eidem and Mirarchi in which he seeks punitive or nominal damages. (Doc. 143).

### 3.  Claims against Defendants Covington and O'Day for sexual harassment.

Horan's Eighth Amendment deliberate indifference claims against Defendants Covington and O'Day for sexually harassing him are premised on allegations that (1) Defendant Covington made an obscene sexual gesture towards him and (2)  Defendant Covington "fondled" Horan's groin area during a routine pat down at the direction of Defendant O'Day. Although allegations of sexual abuse by a corrections officer may amount to a cognizable Eighth Amendment claim, the factual allegations contained in Horan's amended

complaint do not give rise to an Eighth Amendment violation. *Chavis v. United States*, 597 F. App'x 38, 41 (3d Cir. 2014) (not precedential).

   With respect to Horan's claim that on February 3, 2011, Defendant Covington "gave plaintiff the middle finger, then simulate[d] oral sex by pumping his fist towards his mouth while simultaneously sticking his tongue in his check" is insufficient to establish a violation of the Eighth Amendment, as "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); (Doc. 49). The PLRA itself provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." 42 U.S.C. § 1997e(e).[10] "Courts of Appeals have held that sexual harassment in the absence of contact or touching does not establish excessive and unprovoked pain infliction." *Chambliss v. Jones*, No. CIV.A. 3:14-2435, 2015 WL 328064, at *3 (M.D. Pa. Jan. 26, 2015) (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (acknowledging the presence of an Eighth Amendment violation when an inmate endures verbal sexual harassment from prison guards plus physical sexual assault or threats of physical sexual assault); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (noting that verbal sexual harassment without accompanying physical contact is not enough to state a claim for Eighth Amendment violation); *Murray v. U.S. Bureau of Prisons*, 106 F.3d 401 (6th Cir. 1997) (finding that offensive remarks regarding a transsexual prisoner's appearance, lifestyle, and presumed sexual preference do not state an Eighth Amendment claim); *Morales v. Mackalm*, 278 F.3d 126, 129 (2d Cir. 2002) (concluding that a demand for sex in front of other female staff

---

[10] The physical injury requirement contained in § 1997e(e) applies to claims for compensatory damages, but not nominal or punitive damages. *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003).

does not rise to the level of an Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (holding that severe verbal sexual harassment and intimidation are not sufficient to state a claim under the Eighth Amendment); *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (remarking that solicitation of prisoner's masturbation, even under the threat of retaliation, does not violate the Eighth Amendment)).  Indeed, absent allegations of direct physical contact, "allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983." *Robinson*, 729 F. Supp. 2d at 679 (citing *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (affirming dismissal of § 1983 claim where sheriff allegedly laughed at prisoner and threatened to hang him)).Based on the applicable standard, Defendant Covington's alleged actions clearly do not rise to the level of a constitutional violation, because sexual gestures, alone, not constitute conduct that is, "objectively, sufficiently serious."  *Farmer*, 511 U.S. at 834; *Robinson*, 729 F. Supp. 2d at 678.

Furthermore, Horan's allegations concerning the single pat-down search he received from Defendant Covington do not state a claim under the Eighth Amendment. "'A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment.'" *Banks v. Rozum*, 639 F. App'x 778, 778 (3d Cir. 2016) (quoting *Crawford v. Cuomo,* 796 F.3d 252, 257 (2d Cir. 2015)).  However, while severe or repetitive sexual abuse of an inmate by a prison official may amount to a violation of the Eighth Amendment, isolated incidents of mere inappropriate conduct by a prison official generally does not impinge on an inmate's constitutional rights. *See Williams v. Silverman,* Civil No. 12–0974, 2013 WL 6578980, *4 (E.D. Pa. Dec. 16, 2013) (collecting cases) (dismissing with prejudice claim alleging one instance of inappropriate touching during a pat-down search);

see also *Hughes v. Smith,* 237 F. App'x 756, 759 (3d Cir. 2007) (affirming dismissal of Eighth Amendment claim where plaintiff alleged that officer touched a prisoner's testicles through his clothing during a single pat-down frisk); *Watson v. Beard,* Civil No. 09–087J, 2013 WL 4648323, *9–10 (W.D. Pa. Aug. 28, 2013) (collecting cases), *aff'd on other grounds*, 558 F. App'x 141 (3d Cir. 2014); *Ronald Banks v. Gerald L. Rozum,* Civ. Action No. 14-27J, 2015 WL 1186224, at *13 (W.D. Pa. Mar. 13, 2015) (collecting cases). Indeed, in this context, courts in this Circuit typically uphold the constitutionality of a pat-down search through clothing that involves the touching of the groin area where the scope of the search does not venture beyond what is needed to support the legitimate penological purpose of prison security. *See Wolfe v. Beard*, Civ. No. 10-2566, 2013 WL 2370572, at *12 (E.D. Pa. May 31, 2013) ("The Court's legal conclusion that [defendant's] search did not violate the Eighth Amendment is bolstered by the fact that other courts within this circuit have determined that a frisking officer's contact with an inmate's genitals or private areas during a single pat-down search is insufficient to constitute an Eighth Amendment violation.") (citations omitted); *see also Bradley v. United States,* 299 F.3d 197 (3d Cir. 2002) (upholding pat-down search by female customs inspector of female passenger at customs checkpoint where passenger alleged that inspector inappropriately touched her genitals through the passenger's dress); *Grummett v. Rushen,* 779 F.2d 491, 495 (9th Cir. 1985) (upholding pat-down searches, through clothing, by guards); *Watson v. Beard,* Civil No. 09–087J, 2013 WL 4648323, *9–10 (W.D. Pa. Aug. 28, 2013), *aff'd on other grounds,* 558 F. App'x 141 (3d Cir. 2014) (upholding pat-down search through clothing that included the groin area).

Here, while Horan may have found the search offensive, nothing about the circumstances as described by Horan in his amended complaint suggest that Defendant

Covington failed to comport with applicable constitutional standards, as he complains of an isolated, random, painless pat-down search unaccompanied by any sexual commentary or other inappropriate behavior by Defendant Covington during the frisk at issue. *See Davis v. Castleberry,* 364 F. Supp. 2d 319, 321–22 (W.D.N.Y. 2005) (finding allegation that officer grabbed inmate's penis during routine pat-down insufficient to state constitutional claim and noting that a legitimate pat-down may require touching inmate's genital area for the search to be effective). Indeed, Horan has simply failed to properly allege facts to meet the subjective and objective prongs of the Eighth Amendment violation arising out of Defendant Covington's contact with Horan's genitals during the single pat-down search.[11]

Consequently, because Defendant Covington's alleged conduct does not give rise to a constitutional violation, Horan's Eighth Amendment claim against Defendant O'Day for directing that Horan submit to a pat-down by Defendant Covington likewise fails. *See Graw v. Fantasy,* 68 F. App'x 378, 383 (3d Cir. 2003) (not precedential); *Tabb v. Hannah,* No. 1:10-CV-1122, 2012 WL 3113856, at *5 (M.D. Pa. July 30, 2012). Accordingly, it is respectfully recommended that Defendants' motion for summary judgment (Doc. 157), be granted with respect to Horan's Eighth Amendment deliberate indifference claim against Defendants Covington and O'Day.

---

[11] Setting aside Horan's obvious pleading deficiencies by assuming for purposes of this analysis that Horan properly alleged that the single pat-down search involving contact with his genital area was undertaken with the intent to humiliate Horan, Defendants' production of Defendant Covington's uncontroverted declaration in which he provides that: "It is the Department of Corrections policy and practice that all inmates are pat searche[d] as they enter and leave the exercise yard . . . to ensure the inmates are not carrying weapons or other contraband" and that his "pat search of Horan on July 1, 2011 was routine and done according to policy" (Doc. 159-6, at 3), overcomes any pretextual argument Horan could make as to the intent of Defendant Covington in conducting this search.

IV. <span style="font-variant: small-caps;">RECOMMENDATION</span>

Based upon the foregoing, it is respectfully recommended that:

1. Defendants' motion for summary judgment dated January 12, 2016 addressing Horan's Eighth Amendment claim against Defendants Cameron, Bearjar and Casner for labeling him "Unassigned- Refusing Program" (Doc. 131), be **GRANTED**;

2. Defendants' motion for summary judgment dated May 16, 2016 addressing  Horan's First Amendment retaliation claim against Defendants Suzadail, Hardy, Covington, and Warford for filing a false misconduct report and Horan's Eighth Amendment claim against Defendant Covington and O'Day for sexual harassment (Doc. 157), be **GRANTED**;

3. Defendants' motion for summary judgment dated June 14, 2016 (Doc. 168), addressing Horan's First Amendment retaliatory transfer claim against Defendants Collins and Cameron be **GRANTED**;

4. Defendants' motion for summary judgment dated March 15, 2016 addressing Horan's First Amendment and Eighth Amendment claims against Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile for referring to him as a "child molester" in the presence of other inmates, and Horan's First Amendment claim against Defendants Collins, Dorzinsky and Mirarchi for mail tampering (Doc. 143), be **GRANTED IN PART**. Specifically, it is recommended that this motion for summary judgment (Doc. 143), be **GRANTED** with respect to the following claims:

   a. Horan's First Amendment mail tampering claim against Defendants Collins, Dorzinsky, and Mirarchi;

   b. Horan's First Amendment claim against Defendants Eidem, Mirarchi, Hardy, Suzadail, and Gaile for referring to him as a "child molester" in the presence of other inmates;

   c. Horan's Eighth Amendment deliberate indifference claim against Defendants Hardy, Suzadail, and Gaile for referring to him as a "child molester" in the presence of other inmates.

5.  It is recommended that this motion for summary judgment (Doc. 143), be **DENIED** with respect to Horan's Eighth Amendment deliberate indifference claim for <u>punitive and nominal damages</u> against <u>Defendants Mirarchi and Eidem</u> for labelling him a child molester in the presence of other inmates.

BY THE COURT:

**Dated: August 8, 2016**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PATRICK HORAN, | |
| Plaintiff, | CIVIL ACTION NO. 1:13-CV-00140 |
| v. | (CALDWELL, J.)
(MEHALCHICK, M.J.) |
| ROBERT COLLINS, et al., | |
| Defendants. | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 8, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 8, 2016**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK
United States Magistrate Judge**